IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BEAR MOUNTAIN ORCHARDS, INC., et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICH-KIM, INC., et al. | : | NO. 07-853 |

| | | |
|---|---|---|
| DEBRYUN PRODUCE COMPANY., et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICH-KIM, INC., et al. | : | NO. 07-892 |

**MEMORANDUM RE: MOTION FOR SUMMARY JUDGMENT**

**Baylson, J.**                                                                                                                **October 21, 2008**

      Presently before the Court are Plaintiffs' Motions for Summary Judgment under Fed. R. Civ. P. 56. Plaintiffs argue that Defendants Ellis Fleisher and Jacqueline Fleisher (hereinafter "Ellis" or "Jacqueline") are individually liable for Plaintiffs' claims under a trust previously established by this Court pursuant to the Perishable Agricultural Commodities Act. Plaintiffs also request that the Court allow amendment of the pleadings to reflect a fraudulent conveyance claim concerning transfer of Defendants' property to their daughter, allegedly made in anticipation of Defendants' potential liability, and to void the allegedly fraudulent transfer.

      Oral argument was held on October 14, 2008.

**I.**    **Background**

    **A.**    **Facts**

The DeBruyn Plaintiffs (the "Plaintiffs") sold and delivered quantities of produce to the

Defendant Mich-Kim, Inc., t/a Ellis Fleisher Produce Company ("Fleisher Produce"), worth $793,354.07. As a result, the Plaintiffs became beneficiaries in a statutory trust consisting of all of Fleisher Produce's produce-related assets, pursuant to the trust provisions of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499(e)(c) ("PACA"). The Plaintiffs properly preserved their status as beneficiaries of the PACA trust by sending invoices to Fleisher Produce, and on March 5, 2007, after Plaintiffs were not paid for their products, they filed this case against Defendant Fleisher Produce as well Defendants Ellis Fleisher, Jacqueline Fleisher, and Jerome Kline (collectively "Defendants") to enforce the PACA trust. (Plaintiffs' Statement of Material Facts.)

On March 21, 2007 this Court, upon stipulation of the DeBruyn Plaintiffs, the Bear Mountain Group of Plaintiffs,[1] and the Defendants, entered into a Stipulation and Agreed Order for Preliminary Injunction and Establishment of PACA Claims. (Doc. No 25.) Under this order, all creditors of the Defendants were afforded leave to intervene and assert their respective claims by a certain date, which the DeBruyn Plaintiffs did. On October 17, this Court ordered pro rata disbursement of available trust assets to the valid PACA trust creditors of Fleisher Produce

---

[1]The original action was filed by Bear Mountain Orchards, Inc. under docket no. 07-cv-00853. Debruyn Produce Co., California Citrus Selectors, Inc., and Mills Family Farms (collectively "DeBruyn Plaintiffs") filed a separate suit titled DeBruyn Produce Co., et al., v. MichKim under docket no. 07-cv-0892. These two lawsuits were then consolidated upon consent of all the parties on March 21, 2007 under docket no. 07-cv-00853 (Doc. No. 25). Docket no. 07-cv-0892 has been closed. Rigby Produce, Inc. intervened as a third party plaintiff with similar claims against Mich-Kim on April 26, 2007. Teamsters Health & Welfare Fund of Philadelphia and Vicinity, Teamsters Pension Trust Fund of Philadelphia and Vicinity, Teamsters Local 929 Supplemental Income Plan, and Teamsters Local 929 moved to intervene on August 6, 2007 (Doc. No. 49). The Court has granted this motion. Taylor Farms Maryland, Inc. and Intrade Industries entered the lawsuit as interested parties. The Bear Mountain Plaintiffs did not move for summary judgment as part of this motion along with the other Plaintiffs..

pursuant to a Stipulation and Agreed Order for Interim Distribution, which included agreed-upon pre-judgment interest and attorneys' fees through April 13, 2007. (Doc. Nos. 65, 66.) As a result of this procedure, the DeBruyn Plaintiffs established that the responsible parties owed them a total of $793,354.07. However, the remaining trust assets of Fleisher Produce totaled only approximately $27,500 and a sale of a Fleisher Produce warehouse netted approximately $80,000. Thus, there is no dispute that the corporate assets are not available to meet the valid PACA trust claim. (Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment, Pg. 4.) ("Plaintiffs' Memo").

### B. Parties' Arguments

Plaintiffs now file a motion for summary judgment to hold Jacqueline and Ellis Fleisher individually liable for the PACA trust claim because Fleisher Produce will be unable to meet the Corporation's obligations under the trust.[2] Plaintiffs request Jacqueline and Ellis Fleisher be held liable for the remaining portions of the PACA trust claim as well as for interest and attorneys fees. Ellis Fleisher has been an officer and shareholder of Fleisher Produce since its incorporation in 1982 and was in an active position of control of the trust assets at all relevant times to the transactions at issue in this litigation. Defendants did not address the liability of Ellis Fleisher in their briefs and conceded his liability oral argument.

Jacqueline Fleisher was once an officer and shareholder of the company, though the extent of her involvement in the business in the years at issue here is strongly disputed. Defendants respond that Jacqueline resigned from her position as an officer and shareholder

---

[2]The Complaint also names a third individual defendant, Jerome Kline. At oral argument, Plaintiffs agreed to dismiss the claim against Jerome Kline, having been unable to procure service on him.

before the transaction in question, and even if she had still been in such a position, her involvement in the corporation was insufficient to hold her individually liable under current Third Circuit precedent. Defendants did not cross-motion for summary judgment, however, and argue that there are too many issues of material fact on Jacqueline's involvement, and specifically, on when she was a shareholder and officer, for this issue to be decided on summary judgment. Thus, Defendants request the Plaintiff's motion be denied.

In addition, Plaintiffs seek to have property transferred by the Fleishers to their daughter voided as a fraudulent conveyance made in anticipation of their potential personal liability. On December 20, 2006, less then three months before the initiation of the present litigation, Ellis and Jacqueline conveyed their condominium unit in Puerto Rico to their daughter Michele Fleisher for allegedly inadequate consideration. (Plaintiffs' Statement of Undisputed Facts.) As a result, Plaintiffs argue that this conveyance was intended to hinder, delay, and/or defraud the PACA trust creditors by removing a substantial asset from the reach of any judgment creditor. Because the Plaintiffs did not include the fraudulent conveyance claim in their original complaint, they ask leave to amend their complaint, although they have not formally moved under Fed. R. Civ. P. 15(a). Defendants object to the addition of the claim at this time and have filed a motion in limine to that end, arguing that the addition of the claim will be prejudicial to their client if the issue of Jacqueline's liability were to proceed to trial. (Doc. 110.)

    C.    **Evidence on the Record**

        1.    **Jacqueline Fleisher's Liability**

In support of their Motion for Summary Judgment, Plaintiffs attach several documents purporting to establish Jacqueline Fleisher's status and involvement with Fleisher Produce. First,

Plaintiffs cite to a copy of a "Business Entity Filing History" from the Pennsylvania Department of State's website, dated January, 17, 2008, which lists Jacqueline Fleisher as current Secretary of Mich-Kim, Inc. (Plaintiffs' Memo, Ex. B.) Next, Plaintiffs refer to Commerce Bank Signature Cards, opened in 1998 and signed by Jacqueline as Vice President of Fleisher Produce Company, and the 2004 corporate tax returns of Fleisher Produce as evidence of Jacqueline Fleisher's status as owner and officer until at least 2004. (Plaintiffs' Memo, Ex. C and Ex. D.) A March 2007 company payroll worksheet also listed Jacqueline Fleisher as an officer earning a salary and using a company car. (Plaintiffs' Memo, Ex. G.)

As further evidence of her involvement, Plaintiffs offer a Settlement Statement for a Refinance loan entered into by Fleisher Produce and executed by both Ellis and Jacqueline Fleisher on December 24, 2002. (Plaintiffs' Memo, Ex. E.) Plaintiffs also discuss a Real Estate Listing Agreement for a Fleisher Produce warehouse, which was executed by Ellis and Jacqueline Fleisher on May 10, 2005. (Plaintiffs' Memo, Ex. F.) In their Reply Memorandum, Plaintiffs also cite 2005 and 2006 federal form 6198 tax return forms filed by Jacqueline, based on her earnings from Mich-Kim, as evidence both that she was earning income from the corporation after she allegedly had returned her shares to Ellis and that she actively participated in the corporation.[3] (Plaintiffs' Reply Memo, Ex. 2.) Lastly, Plaintiffs emphasize that Jacqueline was benefitting from her relationship with Mich-Kim through 2007, as the company has continued to make mortgage payments on a Vorhees, New Jersey property titled to Jacqueline through that time. (Plaintiffs' Reply Memo, Pg. 5 and Ex. 4.)

Defendants respond with evidence that Jacqueline resigned her position as an officer for

---

[3] A 6198 form is filed by individuals and corporations participating in at-risk activities.

Mich-Kim, Inc. on June 20, 2005 and returned her shares on the same date, at which point they were reissued to Ellis Fleisher, who became the sole shareholder. In support of this transaction, Defendants offer a sworn declaration by Ellis Fleisher, a letter dated June 20, 2005 reflecting Jacqueline's resignation and transfer of her shares to Ellis, and a chart listing the company shareholders and the dates on which shares were issued and reissued. (Defendants' Memo, Ex. B.)

Furthermore, Defendants provide the deposition testimony of both Jacqueline and Ellis Fleisher as further evidence that Jacqueline was not actively involved in running the business. Jacqueline's testimony reveals her uncertainty and lack of memory regarding her role in the business over the years. (Defendants' Memo, Ex. A, Pgs. 30-60.) Though she did not know her name was on a list of persons with check-signing authority, she testified that she did sign checks relating to payroll but only on very rare occasions. (Id. at Pgs. 16-17.) Jacqueline did recall that she worked in accounts receivable and would call to collect payment from people or companies that owned Fleisher Produce money. (Id. at Pgs. 13-14.) She worked two to three days per week from 9:00 am until 2:00 pm. (Id.) She testified that there were no people in the company who were responsible to her, that she never examined the company's tax returns and that she never issued a check, or told someone else in the company to issue a check, to a particular vendor. (Id. at Pgs. 35-37.) She also testified that she was "never, never, never" involved in buying produce and was not aware the company was buying produce it could not pay for. (Id. at 61.) Jacqueline also testified that she was currently heavily medicated for depression and memory loss. (Id. at Pgs. 43-47.) A report from Jacqueline's doctor explains that Jacqueline "has not ever had the ability or the motivation to engage in the complicated and difficult task of running a business."

(Defendants' Memo, Ex. D.)

The testimony of Ellis Fleisher essentially corroborates that of Jacqueline Fleisher. He confirms that he ran the business independently in recent decades and that his wife's responsibilities were limited to calling debtors to ask for payments. (Defendants' Memo, Ex. C at Pg. 22.) Ellis agreed that only he, not Jacqueline, told the officer manager who to make payments to and that only he and his salesmen purchased produce. (Id. at 17-18.) Finally, Ellis recalled Jacqueline returning her shares at some point around 2005 but did not remember if she resigned her position as an officer at the same time, although he thought she did. (Id. at 9-13.)

### 2.     Fraudulent Conveyance Claim

The deed for the Puerto Rico property provides that in consideration for the unit, Michele will pay to her parents, by December 20, 2016, $218,000.00. (Plaintiffs' Memo, Ex. I.) That amount is the same price the Fleishers paid in 2004 for the property, without any consideration of property value increases or other costs. (Plaintiffs' Memo, Pg. 14 and Ex. H.) In his deposition, Ellis admits that he and Jacqueline have been living at the property almost full time since the beginning of 2008 and that their daughter has been making monthly payments to them of about $229 to cover the maintenance costs. (Defendants' Memo, Ex. C at Pg. 53.)

## II.   Legal Standards

### A.     Jurisdiction

This Court has jurisdiction under 28 U.S.C. § 1331. The Plaintiffs' individual liabiliy claims arise under 7 U.S.C. § 499e(c). This Court has supplemental jurisdiction over any possible state law fraudulent conveyance claim under 28 U.S.C. § 1367.

B.     **Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

**III.     Discussion**

    **A.     Jacqueline Fleisher's Individual Liability under PACA**

To grant summary judgment in favor of the Plaintiffs, this Court must determine that no genuine issue of material fact exists and that Plaintiffs deserve judgment as a matter of law under prevailing Third Circuit precedent on individual liability for failure to preserve PACA trust funds. While the Third Circuit has confirmed that individuals may be secondarily liable, it has not produced a clear, bright-line rule for determining when liability attaches. See Weis-Buy Servs.v. Paglia, 411 F.3d 415, 421 (3d Cir. 2005) ("[I]ndividual officers and shareholders, in certain circumstances, may be held individually liable for breaching their fiduciary duties under PACA."). Furthermore, the Weis-Buy court's brief discussion on individual liability appeared in dictum, as the court held later in its opinion that the statute of limitations barred the claim in the first instance. Id. at 424-25.

The Weis-Buy court cited an earlier decision by this court in which Judge Weiner noted that "PACA liability attaches first to licensed seller of perishable agricultural commodities. If the seller's assets are insufficient to satisfy liability, others may be found secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust." Shepard v. K.B. Fruit & Vegetable, Inc., 868 F. Supp. 703, 706 (E.D. Pa. 1994). Judge Weiner developed a two-step inquiry for liability. First, the court considers whether the individual's involvement with the corporation was sufficient to establish legal responsibility. Next the court determines whether the individuals breached a fiduciary duty owed to the PACA creditors. Id. Legal responsibility requires individuals to have been actively involved in the operation of the business. Id. at 707. Judge Weiner specifically held that individuals are not liable merely because they

served as officers or shareholders; they must exercise day-to-day control over the company's affairs to acquire legal responsibility for purposes of liability.  Id. at 706.  In Shepard, the individuals, whom the court found legally responsible, served as officers and directors, owned stock, set up the corporation, were signatories of the corporation's commercial banking agreement with a bank, applied for the corporation's tax identification number, and paid rent on behalf of the corporation.  Id. at 707.

Importantly, the Third Circuit in Weis-Buy indicated that liability could be imposed on "officers and shareholders," but it did not address liability of employees or others officially unrelated to the corporation.  411 F.3d at 421.  Furthermore, none of the cases cited by the Plaintiffs imposed liability on someone other than an officer, director, principal or shareholder.[4]

---

[4] See Coosemans Specialties, Inc. v. Gargiulo, 485 F.3d 701, 706 (2d Cir. 2007) (imposing liability on president, sole shareholder and sole director of produce company); Weis-Buy Servs. v. Paglia, 411 F.3d 415, 420-21 (3d Cir. 2005) (remanding case to district court to consider imposing liability on officer and shareholder of produce company); Patterson Frozen Foods v. Crown Foods Int'l, 307 F.3d 666, 669 (7th Cir. 2002) (president of company); Golman-Hayden Co. v. Fresh Source Produce, 217 F.3d 348, 351 (5th Cir. 2000) (sole shareholder and principal); Hiller Cranberry Prods. v. Koplovsky, 165 F.3d 1, 8-9 (1st Cir. 1999) (president and sole shareholder); Sunkist Growers v. Fisher, 104 F.3d 280, 282-83 (9th Cir. 1997) (sole shareholders); Pacific Int'l Marketing, Inc. v. A & B Produce, Inc., 2007 WL 2253521, at *6 (E.D. Pa. 2007) (president and sole shareholder); Red's Market v. Cape Canaveral Cruise Line, Inc., 181 F. Supp. 2d 1339, 1344-45 (M.D. Fl. 2002) (officers and directors); In Re Snyder, 184 B.R. 473 (D. Md. 1995) (principal); Mid-Valley Produce Corp. v. 4-XXX Produce Corp., 819 F. Supp. 209, 212 (E.D.N.Y. 1993) (president); Bronia, Inc. v. Ho, 873 F. Supp. 854, 860-61 (S.D.N.Y.1995) (sole shareholder, director, and president of corporation); Morris Okun, Inc. v. Harry Zimmerman, Inc., 814 F. Supp. 346, 348-50 (S.D.N.Y.1993) (sole shareholder); Larry Shepard v. KB Fruit & Vegetable, Inc., 868 F. Supp. 703, 706 (E.D. Pa. 1994) (shareholders, officers and directors); In Re Harper, 150 B.R. 416, 417 (Bankr. E.D. Tenn. 1993) (stockholder, principal officer, and director).  However, in denying summary judgment for a plaintiff on other grounds, Judge Surrick has recently commented in dictum, "Although we have not discovered any case in which a person who is neither shareholder nor officer has been held secondarily liable for breach of fiduciary duty, we do not presently hold that such formal contacts are necessary to secondary liability."  Botman Int'l B.V. v. Int'l Produce Imports, Inc., 2004 WL 1686948, at *18 (E.D. Pa. July 28, 2004).

As a result, Plaintiffs suggest that merely establishing that an individual was in a position of control, such as that of a shareholder or officer, is sufficient to impose secondary liability, without requiring evidence of any further involvement by that individual with the company's operations.  (Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment Pg. 11).  Admittedly, the Weis-Buy court quoted several other courts that endorsed imposition of liability for those in a so-called "position of control."  See Golman-Hayden Co. v. Fresh Source Produce Inc., 217 F.3d 348, 351 (5th Cir. 2000) Sunkist Growers, Inc. v. Fisher, 104 F.3d 280, 283 (9th Cir. 1997); Morris Okun, Inc. v. Harry Zimmerman, Inc., 814 F. Supp. 346, 348 (S.D.N.Y. 1993).

However, Plaintiffs' suggestion that the use of the phrase "position of control" in those cases stands for the proposition that a plaintiff merely needs to show the defendant possessed some general status or title within the company misreads the holdings in those cases and the reasoning behind them.  First, Sunkist specifically considered whether a corporation is closely held, how active an individual's role is in the management of the corporation, and whether there is evidence of the individual "acting for the corporation."  104 F.3d at 283.  Sunkist also cites Shepard for the proposition that liability is appropriate if the individual "'had some role in causing the corporate trustee to commit the breach of trust.'"  Id. (quoting Shepard, 868 F. Supp at 706).  Furthermore, in both Golman-Hayden Co., 217 F.3d at 351, and Morris Okun, 814 F. Supp. at 348, the Fifth Circuit and Southern District of New York respectively addressed situations with sole shareholders who had an obligation to exercise control over the day-to-day activities of the corporation, regardless of their actual level of involvement, because of their sole ownership.  However, corporations with single shareholders differ from

those with multiple shareholders, and the holdings from cases concerning sole shareholders do not compel the conclusion that owners of companies with multiple shareholders are necessarily in similar positions of control and responsibility to be held liable by virtue of their position alone. In fact, the court in Shepard, explicitly acknowledged its concern that in small corporations with multiple officers, an individual may hold an office but, for entirely legitimate purposes, not play an active role in control of the company's affairs and thus should not be automatically liable. 868 F. Supp. at 706.

Thus, contrary to Plaintiffs' assertions, the cases cited by the Third Circuit have consistently expressed concern that liability only be imposed where involvement with the corporation is sufficient to establish some significant relationship between the individual and the corporation. Only if the plaintiff can demonstrate that such a relationship existed through evidence of active involvement, not simply evidence that the defendant was in a position of control, can the individual be held legally responsible for acting on behalf of the corporation.

Furthermore, even after the decision in Weis-Buy, several cases in the Eastern District of Pennsylvania have adhered to the involvement analysis set forth in Shepard. Judge Surrick in Botman International B.V. v. International Produce Imports, Inc. denied summary judgment against a defendant trustee where there was a factual dispute over the defendants' level of involvement in the company. 2004 WL 1686948, at *14 (E.D. Pa. July 28, 2004). Magistrate Judge Angell similarly examined the defendant's involvement in a company's day-to-day operations before concluding he was legally responsible and moving on to an analysis of whether he breached a fiduciary duty. Pacific Int'l Marketing, Inc. v. A&B Produce, Inc., 2007 WL 2253521, at *5 (E.D. Pa. Aug. 2, 2007). Therefore, given that the Third Circuit has

not produced a bright-line rule and has only rendered its opinion on individual liability in dictum, this Court will follow the approach of the other judges in this Court, as well as those relied on in the Weis-Buy decision, and continue to require a plaintiff to show an individual's active involvement in the corporation in order to impose individual liability. Mere status as a shareholder or officer does not suffice to establish liability.

Under this legal standard, Plaintiffs have failed to provide sufficient undisputed facts on the record that Defendant Jacqueline Fleisher was actively involved in the corporation to warrant personal liability as a matter of law. Notably, the Court must consider the evidence in the light most favorable to the non-moving party, the Defendants. Plaintiffs offer only two uncontested contracts executed by Jacqueline on behalf of the corporation, a Settlement Statement for a Refinance Loan and a Real Estate Listing Agreement, as evidence of her active involvement, whereas both Defendants' deposition testimony (reviewed above) indicate that she had no significant authority or responsibility within the company and was not actively involved with major decisions. The remainder of Plaintiffs' evidence is directed towards establishing that Jacqueline was a shareholder and officer; however, even if all that evidence were undisputed, that status alone is insufficient to establish Jacqueline's liability, as discussed above. Without more, this Court cannot conclude as a matter of law that Jacqueline was actively involved in and thus legally responsible for Fleisher Produce.

Furthermore, where a genuine issue of fact exists as to whether individual was actively involved in business decisions specifically leading to the company's failure to perform PACA obligations, summary judgement is inappropriate. Botman Int'l B.V., 2004 WL 1686948, at *14. Too many factual issues relevant to the main legal questions remain at this stage to allow

this Court to render a decision on a motion for summary judgment.  Based on the record discussed above, Plaintiffs and Defendants specifically dispute Jacqueline's role at the company, her mental and emotional capacity to serve as an authoritative employee, and whether or not she was a shareholder or officer at the time of the transactions giving rise to the PACA trust.  These facts are material to the issue of whether Jacqueline was legally responsible and therefore individually liable.  Thus, Plaintiffs have failed to show that there are no genuine issues of material fact and that they deserve judgment as a matter of law.  As such, Plaintiffs' motion for summary judgment will be denied.

      B.     **Fraudulent Conveyance Claim**

Although Plaintiffs have briefed the fraudulent conveyance claim in their memoranda for their Motion for Summary Judgment and have requested leave to amend their complaint to add this claim, Plaintiffs have not moved the court under Fed. R. Civ. P. 15(a) to do so.  Rule 15(a) allows amendment of the pleadings to conform the pleadings to the evidence, even after discovery, with consent of the parties or leave of the court.  The Third Circuit has held that leave to amend should be freely given unless there is "undue delay, bad faith on the part of the [movant], or prejudice to the [nonmovant] as a result of the delay." Adams v. Gould, Inc., 739 F.2d 858, 867-68 (3d Cir. 1984).  However, a motion to amend is "committed to the sound discretion of the district judge." Gay v. Petsock, 917 F.2d 768, 772 (3d Cir. 1990).  The Court will address the merits of this request.

The Plaintiffs argue amendment should be permitted because they did not become aware of the Puerto Rico property or the fraudulent conveyance until some time during discovery.  However, Plaintiffs have not offered any persuasive explanation for why they did

not previously seek to amend the complaint.  Plaintiffs certainly became aware of the claim earlier in the discovery process, but they did not attempt to add the claim at that time.  Instead, Plaintiffs chose to wait until summary judgment, at which point they requested, in their summary judgment briefs, that the Court both allow addition of the fraudulent conveyance claim and also rule in Plaintiffs' favor on that claim in its summary judgment decision.

The Third Circuit has consistently upheld denial of late-stage amendments, particularly those attempted once motions for summary judgment have been filed, as untimely and prejudicial.  See, e.g., Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 116 (3d Cir. 2003) (holding district court did not abuse its discretion in refusing "eleventh hour" amendment of complaint on eve of the day the defendant's opposition to plaintiff's motion for summary judgment was due).  In Valentin v. Philadelphia Gas Works, the Third Circuit held that a district court appropriately denied an amendment to add a new legal theory that was based on facts known "well before the close of discovery" when discovery had already closed, the defendant had moved for summary judgment, the parties had submitted pre-trial memoranda, and the trial was scheduled to begin in twelve days.  128 Fed. Appx. 284, 287 (3d Cir. 2005).

In the present case, discovery closed months ago, on March 21, 2008.  Plaintiffs have filed for summary judgment on the issue of the individual Defendants' liability and Defendants have replied on that issue, though they have not responded to the newly raised fraudulent conveyance claim other than to suggest that it does not belong in the litigation.  The Court has held oral argument on the summary judgment motion.  Allowing amendment of the complaint at this time to add a completely new claim on a collateral issue that is unrelated to and based on different facts than the underlying liability claim would unfairly prejudice the

Defendants. Plaintiffs suggest that Defendants are not prejudiced because they supplied Plaintiffs with information on the issue, thus indicating their consent to the litigation on this issue, and because they knew the "validity and legality of the transfer . . . was suspect." (Memorandum of Law in Support of Pl.'s Opposition to Def.'s Motion in Limine, Pg. 3). However, the court cannot presume that proper compliance with discovery requests necessarily reflects a party's implicit consent to litigation on new claims revealed in the discovery documents, especially if litigating the new claims would otherwise prejudice the complying party.

Plaintiffs will not be disadvantaged by the Court's denying the addition of the claim at this time. If the liability of Jacqueline Fleisher is determined in the current litigation, Plaintiffs can bring separate garnishment proceedings in the appropriate jurisdiction, whether in Pennsylvania or Puerto Rico, at which time the fraudulent conveyance claim can be properly raised and adjudicated. Thus, Plaintiffs request to amend the complaint to add the fraudulent conveyance claim is denied, as is the request to void the transfer.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BEAR MOUNTAIN ORCHARDS, INC., et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICH-KIM, INC., et al. | : | NO. 07-853 |

| | | |
|---|---|---|
| DEBRYUN PRODUCE COMPANY., et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICH-KIM, INC., et al. | : | NO. 07-892 |

**ORDER**

AND NOW, this 21st day of October, 2008, for the reasons set forth in the foregoing Memorandum, it is hereby ORDERED as follows:

1. All Plaintiffs' Motions for Summary Judgment (Doc. Nos. 85, 88, 89 and 90) are GRANTED as to Defendant Ellis Fleisher, but DENIED as to Defendant Jacqueline Fleisher.

2. Defendant Jerome Kline is DISMISSED as a party Defendant in this case.

3. Defendants' Motion in Limine (Doc. No. 105) is DENIED as moot.

4. The Court will hold a final pretrial conference by telephone on Wednesday, October 29, 2008 at 4:30 p.m. to determine a trial date and resolve any other disputed issues relating to the trial. Plaintiffs' counsel shall initiate the call, and when all parties are on the phone, call chambers at 267.299.7520.

BY THE COURT:

s/Michael M. Baylson

Michael M. Baylson, U.S.D.J.

O:\CIVIL 07-08\07-853 Bear Mt v. Kim\Bear Mt. - Memorandum MSJ.wpd